Dean W. O'Connor, P.L.L.C.
2942 N 24th Street Suite 114-336
Phoenix, Arizona 85016
(602) 956-9555 – Telephone
Dean@Dean-oconnor.com

Dean W. O'Connor, Esq. Bar #011941
Counsel for the Movant

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ARIZONA

In Re:

SUSAN SIMPSON,

Debtor,

Chapter 13 Proceeding

Case No: 2:20-bk-02088-EPB

NEW HORIZONS' MOTION TO DISMISS CASE or ALTERNATIVELY FOR ENTRY OF ORDER GRANTING STAY RELIEF

NEW HORIZONS ROTH 401K PROFIT SHARING PLAN, BRAD GILBERSTON AS TRUSTEE, by and through counsel undersigned, as a secured creditor files this Motion to Dismiss Case or alternatively for Entry of Order granting Stay Relief.

New Horizons requests and seeks a dismissal of this case, for the following, and not limited to, reasons:

1. Debtor has been behind on her Plan payments and her income and expenses as shown on her Schedule I and J, show the proposed plan is not feasible, and is underfunded. Debtor amended her Plan only after the Trustee sought to dismiss the case, to lower the payments under the plan that were due when the Motion was filed, lowering the plan payments through Oct 1, 2020 by $4,000.00, to avoid a dismissal of the case.

2. That the current version of Debtor's Ch 13 plan doesn't comply with the code and the local rules of this court, by failing to provide for conduit payments to the first mortgage holder on her residence

3. The Debtor hasn't paid in enough to date in plan payments to keep the 1st and 2nd mortgage on her house current, and is post-petition behind on payments to New Horizons (2nd mortgage holder on Debtor's residence) and is believed to be behind and has been late in making regular monthly payments to Chase Bank.

4. The Debtor has amended her Schedule I and J more than once to attempt to show funding is feasible, but has failed to produce any paystubs showing proof of additional income from renters or her work she alleges she is now performing for a roofing company. No bank statements or paystubs have been produced showing the income is as she claims on her schedules.

5. Debtor has made false statements to this court, saying she lived in her house the last 3 years before filing, when that appears is not the case. The house was rented for a period of time under a written lease. At the time she received the loan from New Horizon approximately 2 years prior to filing the case, Debtor claimed she had a rental agreement on her house for a term of a year. A copy of that lease is attached, Exhibit A. Debtor's schedules do not show in the three years prior to filing she lived anywhere but the house secured by New Horizons' deed of trust and so she must have misrepresented the house was leased, when it was not. The loan she made with New Horizons was based on her now residence being an investment property that she did not live in.

5. Debtor has filed 4 plans to date, none of which is feasible, causing unreasonable delay in this case.

6. Debtor on her schedules states she is not married, but her presumed husband, originally bought the house with her and then showing both were married, transferred the house solely to Debtor. A copy of that deed transferring the

property from what appears to be her husband, to her solely was a married person is attached as Exhibit B. Debtor in her petition and schedules doesn't represent she is married, and if married any income or property to be shown belonging to her husband. There is no evidence the Debtor got a divorce in Maricopa County, AZ, after reviewing the public court records and is presumed to still be married, despite her representation in this case. A search for her husband's obituary or death was not found.

7. Prior to filing the case the record shows Debtor was behind over $22,000 in regular mortgage payments to Chase Bank and never made a payment to New Horizons after she made the loan with New Horizon for almost two years.

8. The ADOR has filed proof of claim reflecting the Debtor failed to file state tax returns for years 2010 through and including 2013, and has a non-dischargable tax obligation for 2003 still unpaid.

9. Colina Del Norte, the HOA on Debtor's residence, has filed a proof of claim in this case, showing little or no payments for long periods of time, with an outstanding balance of almost $7000.00 on 3/23/18, apparently paid by the loan from New Horizons, and since April of 2018 made no payments to Debtor's HOA until filing the case, with $2570.60 due and owed on the filing date. It's unknown but likely, the Debtor hasn't paid the HOA fees since filing the case.

10. The Court at recent hearings on the Trustee's Motion to Dismiss the case, agreed and Debtor was instructed to show evidence of payments to Chase Bank. The Debtor has failed to show statements or other evidence of all payments to Chase by receipts from Chase or cancelled checks. At the last hearing Debtor was to submit proof of payment for the December, 2020 monthly payment due to Chase

Bank by Dec. 15, 2020. As of 12/30/20, her attorney, Gary Stickell by his email admits he still doesn't have proof from the Debtor of the Dec., 2020 payment being made to Chase Bank, as the Court required the Debtor to produce to New Horizons. (Exhibit C)

11. The Debtor's ch 13 plan payments to date monthly, are less than what is needed to pay the first mortgage to Chase Bank and the second mortgage to New Horizons. How is the Debtor going to be able to pay the arrearages agreed to be paid to New Horizons of $70,000.00? That's by her current plan, over another $1000.00 to be paid by the Debtor each month in addition to the regular monthly payments to New Horizons and Chase Bank, which regular monthly mortgage payments she hasn't been able to fully pay since the case was filed.

12. New Horizons filed a Motion for Stay Relief on 6/1/2020. A final evidentiary hearing on New Horizons' Stay Relief Motion was set for 10/28/20. The parties agreed to vacate the final hearing and enter into a stipulated order regarding the Motion for Stay Relief. Two months have passed and on December 30, 2020 Debtor's counsel sent an email, copy attached as Exhibit C stating he was not in a position to sign the Stipulation, for the reason his client, the Debtor isn't supplying him with information, including whether or not Chase Bank's regular monthly payment for Dec. 2020 has been paid.

**Argument**

11 U.S.C. § 1325, particularly subsection 1325(a)(3) requires a ch 13 plan to be proposed in good faith. 11 U.S.C. § 521 requires all schedules filed by a debtor in a case to be accurate as is possible. Failure to comply with section 521(1) can preclude confirmation of a plan under the good faith standard of Sec 1325(a). In re Green 141 BR

440, (Bankr. Fla 1992) ; In Re McNichols 254 BR 422 (2000). Intentional misrepresentations and failure to properly amend schedules is grounds for denial of a bankruptcy discharge. In re Johnson 205 BR 125 (Bankr. ND Ill, 1997).

The actions of the Debtor in this case have caused unreasonable delay which is grounds for dismissal or conversion under 11 USC 1307 (c)(1) and a dismissal under 11 U.S.C. § 1307(c)(4), for failure to make timely payments as required under section 1326.

WHEREFORE, New Horizons after notice and hearing, requests this case be dismissed.

DATED this 31th day of December, 2020.

Dean W. O'Connor P.L.L.C.

/s/ Dean W. O'Connor
Dean W. O'Connor, Esq.
Counsel for New Horizons

## CERTIFICATE OF SERVICE

*Original* filed ECF, with the United States Bankruptcy Court this 4th day of January, 2020.

*With copy* of the foregoing mailed the 4th day of January, 2020, to:

**U.S. TRUSTEE**
OFFICE OF THE U.S. TRUSTEE
230 NORTH FIRST AVENUE
SUITE 204
PHOENIX, AZ 85003

**Edward Maney**
CHAPTER 13 TRUSTEE
SUITE 1775
101 NORTH CENTRAL AVENUE
PHOENIX, AZ 85003

Gary Stickell
301 W. Bethany Home Rd Suite B100
Phoenix, AZ 85012

All parties on the attached Master mailing list dated 1-4-2021.

By: /s/Dean W. O'Connor
Dean W. O'Connor

Label Matrix for local noticing
0970-2
Case 2:20-bk-02088-EPB
District of Arizona
Phoenix
Mon Jan 4 13:32:52 MST 2021

PRA Receivables Management, LLC
PO Box 41021
Norfolk, VA 23541-1021

BRAD GILBERTSON
7522 E MCDONALD DR
SCOTTSDALE, AZ 85250-6011

Colina Del Norte Homeowners Association
c/o Goodman Holmgren Law Group, LLP
3654 N. Power Rd. Ste. 132
Mesa, Arizona 85215-9789

NEW HORIZON 401(K) PROFIT SHARING PLAN FBO B
GILBERTSON, TRUSTEE
7522 E. MCDONALD DR
SCOTTSDALE, AZ 85250-6011

U.S. TRUSTEE
OFFICE OF THE U.S. TRUSTEE
230 NORTH FIRST AVENUE
SUITE 204
PHOENIX, AZ 85003-1725

EDWARD J. MANEY
101 N. FIRST AVE., SUITE 1775
PHOENIX, AZ 85003-1927

ARIZONA DEPARTMENT OF REVENUE
2005 N Central Ave Suite 100
Phoenix, AZ 85004-1546

U.S. Bankruptcy Court, Arizona
230 North First Avenue, Suite 101
Phoenix, AZ 85003-0608

(p)JPMORGAN CHASE BANK N A
BANKRUPTCY MAIL INTAKE TEAM
700 KANSAS LANE FLOOR 01
MONROE LA 71203-4774

(p)FIRST FEDERAL CREDIT CONTROL INC
24700 CHAGRIN BLVD
SUITE 205
BEACHWOOD OH 44122-5662

NEW HORIZONS 401(K) PROFIT SHARING PLAN FBO
BRAD GILBERTSON
7522 E. MCDONALD DR
SCOTTSDALE, AZ 85250-6011

Verizon
by American InfoSource as agent
PO Box 4457
Houston, TX 77210-4457

GARY R. STICKELL
ATTORNEY AT LAW, P.C.
301 E. BETHANY HOME ROAD
SUITE B100
PHOENIX, AZ 85012-1259

NEW HORIZONS 401K PROFIT SHARING PLAN
7522 E. MCDONALD DRIVE
SCOTTSDALE, AZ 85250-6011

ARIZONA DEPARTMENT OF REVENUE
c/o Tax, Bankruptcy and Coll
2005 N Central Ave, Suite 100
Phoenix, AZ 85004-1546

COLINA DEL NORTE HOMEOWNERS ASSOCIATION
THRIVE COMMUNITY MANAGEMENT
3100 W RAY RD
CHANDLER, AZ 85226-2472

JPMorgan Chase Bank, National Association
Seventh Floor Camelback Esplanade II
2525 E. Camelback Rd,
Phoenix, AZ 85016-4219

TRU STAR MANAGEMENT SOLUTIONS
3100 W RAY RD
CHANDLER, AZ 85226-2470

Clint N. Goodman
Goodman Law Group LLP
3654 N. Power Rd. Suite 132
Mesa, AZ 85215-9789

SUSAN SIMPSON
5320 E. THUNDER HAWK RD
CAVE CREEK, AZ 85331-5594

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

CHASE
PO BOX 182613
COLUMBUS, OH 43218

FIRST FEDERAL CREDIT CONTROL
24700 CHAGRIN BLVD
BEACHWOOD, OH 44122

(d)FIRST FEDERAL CREDIT CONTROL
24700 CHAGRIN BLVD
SUITE 205
BEACHWOOD, OH 44122

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)JPMorgan Chase Bank, National Association

(d)PRA Receivables Management, LLC
PO Box 41021
Norfolk, VA 23541-1021

End of Label Matrix
Mailable recipients   20
Bypassed recipients    2
Total                 22



Unofficial Document
EXHIBIT "A"
OFF MARIC
2011-095    1 OF 1

RECORDING REQUESTED BY:

When recorded mail to:
SUSAN SIMPSON
5320 E. THUNDER HAWK ROAD
CAVE CREEK, AZ. 85331

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# QUIT-CLAIM DEED

For the consideration of Ten Dollars, and other valuable considerations, I or We,

**DARWIN W. SIMPSON, A MARRIED MAN**

hereby quit claim to

**SUSAN K. SIMPSON, A MARRIED WOMAN**

all right, title, or interest in the following real property situated in Maricopa County, Arizona:

LOT 178, OF COLINA DEL NORTE, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, RECORDED IN BOOK 474 OF MAPS, PAGE 30.

EXEMPT ARS 11-1134B3

Dated September 2, 2004

_____
DARWIN W. SIMPSON

STATE OF ARIZONA
County of MARICOPA
My Commission will expire _____

This instrument was acknowledged before me this 15th day of November, 2011 by DARWIN W. SIMPSON

_____
Notary Public

L. EILEEN ALBERT
Notary Public - Michigan
Clinton County
My Commission Expires Aug 17, 2017
Acting in the County of Ingham

STATE OF ARIZONA
County of MARICOPA
My Commission will expire _____

This instrument was acknowledged before me this ___ day of _____, 20___ by _____

# STANDARD LEASE AGREEMENT

This Agreement, dated February 15th 2018, by and between an individual known as Susan Simpson of 1847 E Sarah Lane, Tempe, Arizona, 85284, hereinafter known as the "Landlord",

AND

An individual known as Ron Hymer, hereinafter known as the "Tenant(s)", agree to the following:

**OCCUPANT(S)**: The Premises is to be occupied strictly as a residential dwelling with only the Tenant(s) mentioned above as the Occupant(s).

**OFFER TO RENT**: The Landlord hereby rents to the Tenant(s), subject to the following terms and conditions of this Agreement, a single-family home with the address of 5320 E Thunder Hawk Rd, Cave Creek, Arizona, 85331 consisting of 3 bathroom(s) and 3 bedroom(s) hereinafter known as the "Premises". The Landlord may also use the address for notices sent to the Tenant(s).

**PURPOSE**: The Tenant(s) and any Occupant(s) may only use the Premises as a residential dwelling. It may not be used for storage, manufacturing of any type of food or product, professional service(s), or for any commercial use unless otherwise stated in this Agreement.

**FURNISHINGS**: The Premises is furnished with the following:

Bedroom Set(s), Dining Room Set(s), Kitchen Set (Including Pots, Pans, Glasses, Mugs, Dishes, etc.), Living Room Set(s) and all other furnishings to be provided by the Tenant(s). Any damage to the Landlord's furnishings shall be the liability of the Tenant(s), reasonable wear-and-tear excepted, to be billed directly or less the Security Deposit.

**APPLIANCES**: The Landlord shall provide the following appliances:

Air Conditioner(s), Dishwasher, Dryer (for Laundry), Fan(s), Hot Water Heater, HVAC, Iron (for Clothes), Microwave, Outdoor Grill, Oven(s), Refrigerator, Stove(s), Television(s), Vacuum Cleaner, Washer (for Laundry), and all other appliances to be provided by the Tenant(s). Any damage to the Landlord's appliances shall be the liability of the Tenant(s), reasonable wear-and-tear excepted, to be billed directly or less the Security Deposit.

**LEASE TERM**: This Agreement shall be a fixed-period arrangement beginning on March 1st 2018 and ending on March 1st 2019 with the Tenant(s) being required to move-out at the end of the Lease Term if a new Lease Agreement is not authorized. Hereinafter known as the "Lease Term".

**RENT**: Tenant(s) shall pay the Landlord in equal monthly installments of $2,500.00 (US Dollars) hereinafter known as the "Rent". The Rent will be due on the First (1st) of every month and be paid by sending payment to the Landlord's aforementioned mailing address.

**NON-SUFFICIENT FUNDS (NSF CHECKS)**: If the Tenant(s) attempts to pay the rent with a check that is not honored or an electronic transaction (ACH) due to insufficient funds (NSF) there shall be a fee of $25.00 (US Dollars).

**LATE FEE:** If rent is not paid on the due date, there shall be a late fee assessed by the Landlord in the amount of:

$50.00 (US Dollars) per occurrence for each month payment that is late after the 10th Day rent is due.

**FIRST (1ST) MONTH'S RENT:** First (1st) month's rent shall be due by the Tenant(s) upon the execution of this Agreement.

**PRE-PAYMENT:** The Landlord shall not require any pre-payment of rent by the Tenant(s).

**PRORATION PERIOD:** The Tenant(s) will move into the Premises before the start of the Lease Term under the following terms:

The Rent will be prorated on a daily basis starting on February 24th 2018 to the start of the Lease Term hereinafter known as the "Proration Period". For the Tenant(s) to occupy the Premises during the Proration Period a payment of $00.00 will be required at the execution of this Agreement.

**SECURITY DEPOSIT:** The Tenant(s) shall not be obligated to pay a Security Deposit as part of this Agreement.

**POSSESSION:** Tenant(s) has examined the condition of the Premises and by taking possession acknowledges that they have accepted the Premises in good order and in its current condition except as herein otherwise stated. Failure of the Landlord to deliver possession of the Premises at the start of the Lease Term to the Tenant(s) shall terminate this Agreement at the option of the Tenant(s). Furthermore, under such failure to deliver possession by the Landlord, and if the Tenant(s) cancels this Agreement, the Security Deposit (if any) shall be returned to the Tenant(s) along with any other pre-paid rent, fees, including if the Tenant(s) paid a fee during the application process before the execution of this Agreement.

**ACCESS:** Upon the beginning of the Proration Period or the start of the Lease Term, whichever is earlier, the Landlord agrees to give access to the Tenant(s) in the form of keys, fobs, cards, or any type of keyless security entry as needed to enter the common areas and the Premises. Duplicate copies of the access provided may only be authorized under the consent of the Landlord and, if any replacements are needed, the Landlord may provide them for a fee. At the end of this Agreement all access provided to the Tenant(s) shall be returned to the Landlord or a fee will be charged to the Tenant(s) or the fee will be subtracted from the Security Deposit.

**MOVE-IN INSPECTION:** Before, at the time of the Tenant(s) accepting possession, or shortly thereafter, the Landlord and Tenant(s) shall perform an inspection documenting the present condition of all appliances, fixtures, furniture, and any existing damage within the Premises.

**SUBLETTING:** The Tenant(s) shall not have the right to sub-let the Premises or any part thereof without the prior written consent of the Landlord. If consent is granted by the Landlord, the Tenant(s) will be responsible for all actions and liabilities of the Sublessee including but not limited to: damage to the Premises, non-payment of rent, and any eviction process (In the event of an eviction the Tenant(s) shall be responsible for all court filing fee(s), representation, and any other fee(s) associated with removing the Sublessee). The consent by the Landlord to one sub-let shall not be deemed to be consent to any subsequent subletting.

**ABANDONMENT:** If the Tenant(s) vacates or abandons the property for a time-period that is the minimum set by State law or seven (7) days, whichever is less, the Landlord shall have the right to

terminate this Agreement immediately and remove all belongings including any personal property off of the Premises. If the Tenant(s) vacates or abandons the property, the Landlord shall immediately have the right to terminate this Agreement.

**ASSIGNMENT**: Tenant(s) shall not assign this Lease without the prior written consent of the Landlord. The consent by the Landlord to one assignment shall not be deemed to be consent to any subsequent assignment.

**PARKING**: The Landlord shall provide the Tenant(s) 3 Parking Spaces.

The Landlord shall not charge a fee for the 3 Parking Spaces.

**RIGHT OF ENTRY**: The Landlord shall have the right to enter the Premises during normal working hours by providing notice in accordance with the minimum State requirement in order for inspection, make necessary repairs, alterations or improvements, to supply services as agreed or for any reasonable purpose. The Landlord may exhibit the Premises to prospective purchasers, mortgagees, or lessees upon reasonable notice.

The new owner shall have the right to terminate ONLY after providing at least 90 days' notice to the Tenant(s).

**UTILITIES**: The Landlord shall not pay for any of the utilities and services and will be the responsibility of the Tenant(s).

**MAINTENANCE, REPAIRS, OR ALTERATIONS**: The Tenant(s) shall, at their own expense and at all times, maintain premises in a clean and sanitary manner, and shall surrender the same at termination hereof, in as good condition as received, normal wear and tear excepted. The Tenant(s) may not make any alterations to the leased premises without the consent in writing of the Landlord. The Landlord shall be responsible for repairs to the interior and exterior of the building. If the Premises includes a washer, dryer, freezer, dehumidifier unit and/or air conditioning unit, the Landlord makes no warranty as to the repair or replacement of units if one or all shall fail to operate. The Landlord will place fresh batteries in all battery-operated smoke detectors when the Tenant(s) moves into the premises. After the initial placement of the fresh batteries it is the responsibility of the Tenant(s) to replace batteries when needed. A monthly "cursory" inspection may be required for all fire extinguishers to make sure they are fully charged.

**EARLY TERMINATION**: The Tenant(s) may be allowed to cancel this Agreement under the following conditions:

The Tenant(s) must provide at least 30 days' notice and pay an early termination fee of $5,000.00 (US Dollars) which does not include the rent due for the notice period. During the notice period of 30 days the rent shall be paid in accordance with this Agreement.

**PETS**: The Tenant(s) shall not be allowed to have pets on the Premises or common areas except those that are necessary for individuals with disabilities.

**NOISE/WASTE**: The Tenant(s) agrees not to commit waste on the premises, maintain, or permit to be maintained, a nuisance thereon, or use, or permit the premises to be used, in an unlawful manner. The Tenant(s) further agrees to abide by any and all local, county, and State noise ordinances.

**GUESTS**: There shall be no other persons living on the Premises other than the Tenant(s) and any Occupant(s). Guests of the Tenant(s) are allowed for periods not lasting for more than 3 weeks unless otherwise approved by the Landlord.

**SMOKING POLICY**: Smoking on the Premises is permitted but only in the following areas: Outside

**COMPLIANCE WITH LAW**: The Tenant(s) agrees that during the term of the Agreement, to promptly comply with any present and future laws, ordinances, orders, rules, regulations, and requirements of the Federal, State, County, City, and Municipal government or any of their departments, bureaus, boards, commissions and officials thereof with respect to the premises, or the use or occupancy thereof, whether said compliance shall be ordered or directed to or against the Tenant(s), the Landlord, or both.

**DEFAULT**: If the Tenant(s) fails to comply with any of the financial or material provisions of this Agreement, or of any present rules and regulations or any that may be hereafter prescribed by the Landlord, or materially fails to comply with any duties imposed on the Tenant(s) by statute or State laws, within the time period after delivery of written notice by the Landlord specifying the non-compliance and indicating the intention of the Landlord to terminate the Agreement by reason thereof, the Landlord may terminate this Agreement. If the Tenant(s) fails to pay rent when due and the default continues for the time-period specified in the written notice thereafter, the Landlord may, at their option, declare the entire balance (compiling all months applicable to this Agreement) of rent payable hereunder to be immediately due and payable and may exercise any and all rights and remedies available to the Landlord at law or in equity and may immediately terminate this Agreement.

The Tenant(s) will be in default if: (a) Tenant(s) does not pay rent or other amounts that are owed in accordance with respective State laws; (b) Tenant(s), their guests, or the Occupant(s) violate this Agreement, rules, or fire, safety, health, or criminal laws, regardless of whether arrest or conviction occurs; (c) Tenant(s) abandons the Premises; (d) Tenant(s) gives incorrect or false information in the rental application; (e) Tenant(s), or any Occupant(s) is arrested, convicted, or given deferred adjudication for a criminal offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia under state statute; (f) any illegal drugs or paraphernalia are found in the Premises or on the person of the Tenant(s), guests, or Occupant(s) while on the Premises and/or; (g) as otherwise allowed by law.

**MULTIPLE TENANT(S) OR OCCUPANT(S)**: Each individual that is considered a Tenant(s) is jointly and individually liable for all of this Agreement's obligations, including but not limited to rent monies. If any Tenant(s), guest, or Occupant(s) violates this Agreement, the Tenant(s) is considered to have violated this Agreement. Landlord's requests and notices to the Tenant(s) or any of the Occupant(s) of legal age constitutes notice to the Tenant(s). Notices and requests from the Tenant(s) or any one of the Occupant(s) (including repair requests and entry permissions) constitutes notice from the Tenant(s). In eviction suits, the Tenant(s) is considered the agent of the Premise for the service of process.

**DISPUTES**: If a dispute arises during or after the term of this Agreement between the Landlord and Tenant(s), they shall agree to hold negotiations amongst themselves, in "good faith", before any litigation.

**SEVERABILITY**: If any provision of this Agreement or the application thereof shall, for any reason and to any extent, be invalid or unenforceable, neither the remainder of this Agreement nor

the application of the provision to other persons, entities or circumstances shall be affected thereby, but instead shall be enforced to the maximum extent permitted by law.

**SURRENDER OF PREMISES**: The Tenant(s) has surrendered the Premises when (a) the move-out date has passed and no one is living in the Premise within the Landlord's reasonable judgment; or (b) Access to the Premise have been turned in to Landlord – whichever comes first. Upon the expiration of the term hereof, the Tenant(s) shall surrender the Premise in better or equal condition as it were at the commencement of this Agreement, reasonable use, wear and tear thereof, and damages by the elements excepted.

**RETALIATION**: The Landlord is prohibited from making any type of retaliatory acts against the Tenant(s) including but not limited to restricting access to the Premises, decreasing or cancelling services or utilities, failure to repair appliances or fixtures, or any other type of act that could be considered unjustified.

**WAIVER**: A Waiver by the Landlord for a breach of any covenant or duty by the Tenant(s), under this Agreement is not a waiver for a breach of any other covenant or duty by the Tenant(s), or of any subsequent breach of the same covenant or duty. No provision of this Agreement shall be considered waived unless such a waiver shall be expressed in writing as a formal amendment to this Agreement and executed by the Tenant(s) and Landlord.

**EQUAL HOUSING**: If the Tenant(s) possess(es) any mental or physical impairment, the Landlord shall provide reasonable modifications to the Premises unless the modifications would be too difficult or expensive for the Landlord to provide. Any impairment of the Tenant(s) is/are encouraged to be provided and presented to the Landlord in writing in order to seek the most appropriate route for providing the modifications to the Premises.

**HAZARDOUS MATERIALS**: The Tenant(s) agrees to not possess any type of personal property that could be considered a fire hazard such as a substance having flammable or explosive characteristics on the Premises. Items that are prohibited to be brought into the Premises, other than for everyday cooking or the need of an appliance, includes but is not limited to gas (compressed), gasoline, fuel, propane, kerosene, motor oil, fireworks, or any other related content in the form of a liquid, solid, or gas.

**WATERBEDS**: The Tenant(s) is not permitted to furnish the Premises with waterbeds.

**INDEMNIFICATION**: The Landlord shall not be liable for any damage or injury to the Tenant(s), or any other person, or to any property, occurring on the Premises, or any part thereof, or in common areas thereof, and the Tenant(s) agrees to hold the Landlord harmless from any claims or damages unless caused solely by the Landlord's negligence. It is recommended that renter's insurance be purchased at the Tenant(s)'s expense.

**COVENANTS**: The covenants and conditions herein contained shall apply to and bind the heirs, legal representatives, and assigns of the parties hereto, and all covenants are to be construed as conditions of this Agreement.

**NOTICES**: Any notice to be sent by the Landlord or the Tenant(s) to each other shall use the following mailing addresses:

**Landlord's/Agent's Mailing Address**

Susan Simpson

1847 E Sarah Lane, Tempe, Arizona, 85284

**Tenant(s)'s Mailing Address**

Ron Hymer
5320 E Thunder Hawk Rd, Cave Creek, Arizona, 85331

**AGENT/MANAGER:** The Landlord does not have an Agent or Manager and all contact in regards to any repair, maintenance, or complaint must go through the Landlord through the following contact information:

Landlord's Phone Number: (480) 216-9344 Email: sswest@cox.net.

**PREMISES DEEMED UNINHABITABLE:** If the Property is deemed uninhabitable due to damage beyond reasonable repair the Tenant(s) will be able to terminate this Agreement by written notice to the Landlord. If said damage was due to the negligence of the Tenant(s), the Tenant(s) shall be liable to the Landlord for all repairs and for the loss of income due to restoring the Premises back to a livable condition in addition to any other losses that can be proved by the Landlord.

**SERVICEMEMBERS CIVIL RELIEF ACT:** In the event the Tenant(s) is or hereafter becomes, a member of the United States Armed Forces on extended active duty and hereafter the Tenant(s) receives permanent change of station (PCS) orders to depart from the area where the Premises are located, or is relieved from active duty, retires or separates from the military, is ordered into military housing, or receives deployment orders, then in any of these events, the Tenant may terminate this lease upon giving thirty (30) days written notice to the Landlord. The Tenant shall also provide to the Landlord a copy of the official orders or a letter signed by the Tenant's commanding officer, reflecting the change which warrants termination under this clause. The Tenant will pay prorated rent for any days which he/she occupies the dwelling past the beginning of the rental period.

The damage/security deposit will be promptly returned to Tenant, provided there are no damages to the Premises.

**BUSINESS PASS-THROUGH TAX:** If any tax is levied within the municipality of the Premises these taxes may adjust the amount of rent due to equal the difference caused by the new percentage amount of the tax in accordance with § 33-1314(E) of the Arizona Revised Statutes.

**LEAD PAINT:** The Premises was not constructed before 1978 and therefore does not contain lead-based paint.

**GOVERNING LAW:** This Agreement is to be governed under the laws located in the State of Arizona.

**ADDITIONAL TERMS AND CONDITIONS:** There are no further terms or conditions that will be added to this Agreement other than any attachments or addendums attached.

**ENTIRE AGREEMENT:** This Agreement contains all the terms agreed to by the parties relating to its subject matter including any attachments or addendums. This Agreement replaces all previous discussions, understandings, and oral agreements. The Landlord and Tenant(s) agree to the terms and conditions and shall be bound until the end of the Lease Term.

The parties have agreed and executed this agreement on February 15th 2018.

**LANDLORD(S) SIGNATURE**

**Landlord's Signature** _____
By Susan Simpson

**TENANT(S) SIGNATURE**

**Tenant's Signature** _____*Ron Hymer*_____

# AMOUNT ($) DUE AT SIGNING

**First (1st) Month's Rent:** $2,500.00

**Proration Amount:** $00.00

# Move-in Checklist

Property Address: 5320 E Thunder Hawk Rd, Cave Creek, Arizona, 85331
Unit Size: 3 Bedroom(s)
Move-in Inspection Date: _____ Move-out Inspection Date: _____

Write the condition of the space along with any specific damage or repairs needed. Be sure to write any repair needed such as paint chipping, wall damage, or any lessened area that could be considered maintenance needed at the end of the lease, and therefore, be deducted at the end of the Lease Term.

## Living Room

Floors Condition _____ Specific Damage _____
Walls Condition _____ Specific Damage _____
Ceiling Condition _____ Specific Damage _____
Windows Condition _____ Specific Damage _____
Lighting Condition _____ Specific Damage _____
Electrical Outlets Condition _____ Specific Damage _____
Other Condition _____ Specific Damage _____
Other Condition _____ Specific Damage _____

## Dining Room

Floors Condition _____ Specific Damage _____
Walls Condition _____ Specific Damage _____
Ceiling Condition _____ Specific Damage _____
Windows Condition _____ Specific Damage _____
Lighting Condition _____ Specific Damage _____
Electrical Outlets Condition _____ Specific Damage _____
Other Condition _____ Specific Damage _____
Other Condition _____ Specific Damage _____

## Kitchen Area

Stove/Oven Condition _____ Specific Damage _____
Refrigerator Condition _____ Specific Damage _____
Sink/Faucets Condition _____ Specific Damage _____
Floors Condition _____ Specific Damage _____
Walls Condition _____ Specific Damage _____
Ceiling Condition _____ Specific Damage _____
Windows Condition _____ Specific Damage _____
Lighting Condition _____ Specific Damage _____
Electrical Outlets Condition _____ Specific Damage _____
Cabinets Condition _____ Specific Damage _____
Closets Condition _____ Specific Damage _____
Exhaust Fan Condition _____ Specific Damage _____
Fire Alarms Condition _____ Specific Damage _____
Other Condition _____ Specific Damage _____
Other Condition _____ Specific Damage _____

## Bedroom(s)

Doors/Locks Condition _____ Specific Damage _____
Closets Condition _____ Specific Damage _____
Floors Condition _____ Specific Damage _____
Walls Condition _____ Specific Damage _____
Ceiling Condition _____ Specific Damage _____
Windows Condition _____ Specific Damage _____
Lighting Condition _____ Specific Damage _____
Electrical Outlets Condition _____ Specific Damage _____
Other Condition _____ Specific Damage _____
Other Condition _____ Specific Damage _____

## Bathroom(s)

Sink/Faucets Condition _____ Specific Damage _____
Shower/Tub Condition _____ Specific Damage _____
Curtain/Door Condition _____ Specific Damage _____
Towel Rack Condition _____ Specific Damage _____
Toilet Condition _____ Specific Damage _____
Doors/Locks Condition _____ Specific Damage _____
Floors Condition _____ Specific Damage _____
Walls Condition _____ Specific Damage _____
Ceiling Condition _____ Specific Damage _____
Windows Condition _____ Specific Damage _____
Lighting Condition _____ Specific Damage _____
Electrical Outlets Condition _____ Specific Damage _____
Other Condition _____ Specific Damage _____
Other Condition _____ Specific Damage _____

## Other

Heating Condition _____ Specific Damage _____
AC Unit(s) Condition _____ Specific Damage _____
Hot Water Heater Condition _____ Specific Damage _____
Smoke Alarm(s) Condition _____ Specific Damage _____
Door Bell Condition _____ Specific Damage _____
Other Condition _____ Specific Damage _____
Other Condition _____ Specific Damage _____

I, a Tenant on this Lease, have sufficiently inspected the Premises and confirm above-stated information. (only 1 Tenant required)

**Tenant's Signature** _Ron Hymer_

I, the Landlord on this Lease, have sufficiently inspected the Premises and confirm above-stated information.

**Landlord's Signature** _____

EXHIBIT "C"

# Dean O'Connor

**From:** Gary Stickell <gstickell@garystickell.net>
**Sent:** Wednesday, December 30, 2020 11:14 AM
**To:** Dean O'Connor
**Subject:** Re: Stay Relief Stipulation

I am waiting for proof from Client that she made the December payment. I am not in a position to proceed.

Gary R. Stickell
Gary R. Stickell, Attorney at Law, P.C.
301 E. Bethany Home Road, Suite B100
Phoenix, AZ 85012
(602) 266-2622
Fax: (480) 287-9607
email -- gstickell@garystickell.net

Website: http://www.garystickell.com/

Recipient of the 2010 Award of Special Merit from the State Bar of Arizona, Member of the Year by the Arizona Consumer Bankruptcy Counsel in 2011 and the Arizona State Bar, Bankruptcy Section's Pro Bono Distinguished Service Award

"What Americans want is very simple - they want an America as good as its promise" - Rep. Barbara Jordan

The information contained in this e-mail message is privileged and confidential information intended only for the use of the individual or entity(ies) named above. If the recipient of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us by telephone and return the original message to us at the above address via the U.S. Postal Service. Receipt by anyone other than the intended recipient is not intended as a waiver of any attorney-client or work product privilege

On Monday, December 28, 2020, 3:20:19 PM MST, Dean O'Connor <dean@dean-oconnor.com> wrote:

Gary:

So where our we on the stay relief motion. I cant sign that Chase payments are current or no conduit payments for Chase. Otherwise I think we can move forward on the stipulation.

Dean

Dean W. O'Connor PLLC